151 Ill. App.3d 344 (1986)
502 N.E.2d 761
In re T.S., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
T.S., Respondent-Appellant).
No. 4-86-0157.
Illinois Appellate Court  Fourth District.
Opinion filed December 30, 1986.
*345 Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.
Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Reversed and remanded.
PRESIDING JUSTICE SPITZ delivered the opinion of the court:
A petition for adjudication of wardship was filed in the circuit court of McLean County alleging that minor respondent, T.S., had committed the offense of arson (Ill. Rev. Stat. 1985, ch. 38, par. 20-1). Thereafter, respondent filed a motion to suppress statements he had made to a police officer during an interrogation. The motion was denied after a hearing. Following the subsequent adjudicatory and dispositional hearings, respondent was found to be delinquent, adjudicated a ward of the court, and placed on probation for a period of 18 months. Respondent now appeals the adjudication of delinquency. On appeal, *346 respondent contends that the trial court's finding that respondent's warned written statement was given voluntarily is against the manifest weight of the evidence. For the reasons that follow, we reverse and remand.
On October 23, 1985, a petition for adjudication of wardship was filed in the circuit court of McLean County alleging that respondent had committed the offense of arson (Ill. Rev. Stat. 1985, ch. 38, par. 20-1) by setting fire to a trailer owned by Mary Sigler. On December 2, 1985, respondent filed a motion to suppress statements he made to Detective Mark Bailey during an interrogation on October 14, 1985. The motion alleged that the statements were made under threat and duress and, therefore, were given involuntarily.
On December 9, 1985, a hearing was held on the motion to suppress. First to testify was the interrogator, Detective Mark Bailey, from the McLean County sheriff's department. On direct examination, Bailey testified that on October 14, 1985, he proceeded to respondent's residence. Bailey arrived at the residence at 10:30 a.m., and both respondent and his mother were home. Bailey had a discussion with respondent's mother and then "advised [respondent] that [he] talked to his mother and wanted to talk to [respondent] up at the Sheriff's office * * * [regarding a] fire that had happened a couple days before." Thereafter, Bailey transported respondent, unaccompanied by his mother, to the sheriff's station in his squad car. They arrived at the station at approximately 10:45 a.m. and proceeded to Bailey's office. Only Bailey and respondent were present in the office during the interrogation that followed.
Bailey further testified that he first informed respondent that he wanted to get some questions answered and that respondent "was not under arrest at this time, and that he was free to terminate the visit at any time." Bailey stated that he then told respondent "that certain pieces of evidence had been sent to the crime lab which would be able to match him to the fire." Respondent replied that "he wasn't involved" in the incident. Next, Bailey informed respondent "[t]hat a video tape had been made by a Department of Drug Enforcement [agent] and had [respondent] on video tape entering and exiting the trailer." Respondent replied that "it wasn't him." Bailey then informed respondent "that the tape itself, the video tape, did not show [respondent] starting the fire but it did show him entering the trailer and leaving and there must be some reason if [respondent] didn't start the fire why he was in the trailer." Respondent then stated that "he had gone into the trailer but he had just gone to look around; he didn't start the fire." Bailey testified that he and respondent then "talked for *347 a few minutes and shortly thereafter [respondent] made the statement that he had in fact started the fire." It was approximately 11:20 a.m. at this time. Next, Bailey and respondent "went through step by step of how the fire was started, how [respondent] entered the trailer, what he did next [and], where the liquid that he used to start the fire was located." Bailey then asked respondent to draw a "map or a lay-out" of the trailer.
Bailey testified that he next asked respondent if he would "submit to a typed voluntary statement regarding the facts of the fire." Respondent "said that he would." At that point, Bailey gave respondent "what's known as page one of the statement form, asked him to read this as [Bailey] read it out loud, telling what [respondent's] rights were regarding the statement." Afterward, Bailey asked respondent if he understood everything and respondent stated that he did. Subsequent to this, the written statement was prepared, read and reviewed by respondent, and signed by Bailey, respondent, and Officer Bob Lilienthal, who acted as a witness. The written statement was completed at approximately 12:20 p.m. Afterward, Bailey took respondent to the county jail where he was photographed, fingerprinted, and thereafter released.
On cross-examination, Bailey admitted that he "had a video tape but nothing depicting what [he had] said." Bailey believed that respondent "may have" cried during the interview. Bailey acknowledged that he had a large key, but did not recall taking it out of his pocket and placing it on his desk. Further, Bailey denied telling respondent that he would put him in jail if he did not tell the truth. Bailey stated that he informed respondent "that if he did not cooperate [Bailey] would get ahold of the State's Attorney's office and give them the information regarding the evidence and the video tape and that they would have to make the determination at that time." Bailey admitted that he did not advise respondent of his Miranda rights until they started the written statement. Further, Bailey acknowledged that the respondent's written statement was "merely reiteration of [the] interview" that he had with respondent. Finally, on redirect Bailey testified that he informed respondent:
"[T]hat with his cooperation if [Bailey] got it at [that] time that [respondent] would not be arrested. He would just be taken up to the jail and booked and released. If that cooperation was not given regarding this, information would be forwarded to the State's Attorney."
Respondent testified that he was 15 years of age on October 14, 1985. Respondent further testified that during the interrogation, Bailey *348 informed him that he had some evidence that respondent started the fire. Next, Bailey informed respondent, with a videotape in his possession, that "he had a video tape of [respondent] doing it and said he had witnesses that [saw respondent] go in the trailer." Respondent stated that Bailey then "took a big key out of his desk drawer and said he talked to the State's Attorney and he said if [he] didn't tell the truth that [Bailey] was going to lock [him] up and take [him] to jail." Respondent further stated that after denying involvement in the fire that Bailey "kept pressing" him, "saying that [respondent] did start the fire after every time [respondent] said [he] didn't." Respondent then admitted that he started the fire, so Bailey would "quit bothering [him] about it," and because he "didn't want to go to jail." Finally, when asked whether he believed he could leave Bailey's office at any time during the interrogation, he answered, "[n]o, not really."
At the conclusion of the suppression hearing, the trial court denied defendant's motion, stating:
"THE COURT: * * * I think the Court will resolve generally in favor of the State, but in taking that into account, necessarily in any police questioning there is necessarily something coercive which would impinge upon the mind of he who is being questioned. * * * [H]owever, neither the coercion or the coaxing would have given rise to the kinds of duress which would negate the voluntariness of the statement in question * * *."
At the January 14, 1986, adjudicatory hearing, evidence was presented that an unoccupied and unlocked mobile home owned by Mary Sigler was damaged by fire on October 4, 1985. Officer Bailey testified concerning the minor's written admission, and only the minor's written statement was introduced into evidence. Officer Bailey stated that the minor had not been given the Miranda warnings until immediately prior to taking the written statement.
Respondent, testifying on his own behalf, denied any involvement in the fire. Respondent further testified that on the evening of the fire, he was at the Whites' residence. When asked why he told Detective Bailey, during the interrogation, that he had started the fire, respondent stated "[b]ecause he said that if I didn't admit to it that the State's Attorney or the District, I'm not sure which, and that he had talked to Judge Witte and said I was going to jail." Respondent also called several witnesses, one of whom was Brian White. White testified that he and respondent were at White's mother's trailer the evening of the fire. In short, White stated that on that evening, respondent was never out of his sight from 8:30 p.m. to approximately 10 p.m., at which time he and respondent heard fire trucks come into the trailer *349 park. White further stated that upon hearing the sirens, he and respondent went outside to see what was happening.
At the conclusion of the adjudicatory hearing, the trial court found that the allegations of the State's petition were proved beyond a reasonable doubt, found respondent to be a delinquent minor, and set the cause for disposition. Following the dispositional hearing, respondent was adjudicated a ward of the court and thereafter placed on probation for a period of 18 months. This appeal followed.
The sole issue on appeal is whether the trial court's finding that respondent's warned written statement was given voluntarily is against the manifest weight of the evidence where the written statement was a "mere reiteration" of respondent's unwarned and allegedly coerced oral statement.
 1 "The fundamental principle governing the admission of confessions is well known: the confession must be voluntary; otherwise it is totally inadmissible." (People v. Berry (1984), 123 Ill. App.3d 1042, 1044, 463 N.E.2d 490, 493.) The State bears a heavy burden of showing the statement or confession was knowingly, intelligently, and voluntarily made. (Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602; People v. Kincaid (1981), 87 Ill.2d 107, 429 N.E.2d 508, cert. denied (1982), 455 U.S. 1024, 72 L.Ed.2d 144, 102 S.Ct. 1726.) Where, as here, the trial court finds that the confession was voluntary, a reviewing court's inquiry is limited to whether that finding is contrary to the manifest weight of the evidence. People v. Berry (1984), 123 Ill. App.3d 1042, 463 N.E.2d 490.
Respondent contends that the trial court's ruling is against the manifest weight of the evidence. Respondent asserts that Detective Bailey's deceptive actions violated the dictates of Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602. It is the respondent's position that "Bailey's willful, knowingly [sic] lies which tricked [respondent] into making the statements" rendered his confession involuntary. Respondent specifically refers to Bailey's alleged comments regarding the videotape, witnesses, and evidence and the fact that respondent would be jailed if he did not admit to the offense or tell the truth.
Respondent further argues that in addition to deliberate police deception, other factors rendered his confession involuntary. Respondent asserts that at the time of his confession, he was 15 years old, in the ninth grade, and was attending alternative school because he had received failing grades in junior high school. He further asserts that he was transported alone, from his home to the "inherently coercive" atmosphere of the police station in a squad car. Also, respondent points *350 out that Bailey did not advise him of his constitutional rights until more than an hour after the interrogation commenced, over 35 minutes after his initial admission, and after a full, detailed oral confession.
Respondent concludes that based upon the totality of the circumstances, including deliberate police deception, the failure to properly advise him of his constitutional rights, and the other various factors, his oral and written statements were made involuntarily.
 2 The test to determine whether a confession is voluntary is whether it was made freely, voluntarily, and without compulsion or inducement of any sort (People v. Hester (1968), 39 Ill.2d 489, 237 N.E.2d 466) or whether the accused's will was overborne at the time of the confession (People v. Kincaid (1981), 87 Ill.2d 107, 429 N.E.2d 508). This determination depends upon the totality of the circumstances (People v. Prim (1972), 53 Ill.2d 62, 289 N.E.2d 601, cert. denied (1973), 412 U.S. 918, 37 L.Ed.2d 144, 93 S.Ct. 2731), and consideration must be given to both the characteristics of the accused and the details of the interrogation (People v. Simmons (1975), 60 Ill.2d 173, 326 N.E.2d 383). The procedural safeguards outlined in Miranda were designed in recognition of the fact that during custodial interrogation "coercion can be mental as well as physical." (Miranda v. Arizona (1966), 384 U.S. 436, 448, 16 L.Ed.2d 694, 709, 86 S.Ct. 1602, 1614; People v. Martin (1984), 102 Ill.2d 412, 466 N.E.2d 228, cert. denied (1984), 469 U.S. 935, 83 L.Ed.2d 270, 105 S.Ct. 334.) The Miranda court stated that "any evidence that an accused was threatened, tricked, or cajoled into a waiver of will, of course, show that the defendant did not voluntarily waive his privilege [against self-incrimination]." (Miranda v. Arizona (1966), 384 U.S. 436, 476, 16 L.Ed.2d 694, 725, 86 S.Ct. 1602, 1628.) As the State points out, police deception is but one factor to consider when making a determination of voluntariness. (People v. Kashney (1986), 111 Ill.2d 454, 490 N.E.2d 688; People v. Martin (1984), 102 Ill.2d 412, 466 N.E.2d 228 (and cases cited therein).) Other factors to be considered include the age, education, and intelligence of the accused, the duration of questioning, and whether he received his constitutional rights or was subjected to any physical punishment. (Schneckloth v. Bustamonte (1973), 412 U.S. 218, 226, 36 L.Ed.2d 854, 862, 93 S.Ct. 2041, 2047; People v. Martin (1984), 102 Ill.2d 412, 466 N.E.2d 228.) Also considered are the accused's mental capacity, emotional characteristics, and experience in criminal matters. People v. Hester (1968), 39 Ill.2d 489, 237 N.E.2d 466.
With these principles in mind, we review the record before us to *351 determine whether respondent's subsequent written confession was made knowingly and voluntarily. In making this voluntariness determination, we see that the characteristics of the respondent and the details of the interrogation militate strongly against the State. The characteristics of the respondent include: the respondent's young age and the fact that he is to some degree dependent upon his parents; respondent had rather limited experience in criminal affairs; and respondent was enrolled in an "alternative school." The details of the interrogation include: respondent was taken to the police station, alone, in a squad car; respondent was not accompanied by his parents or an attorney during the interrogation at the police station; although respondent was initially informed he was free to go, respondent testified that he did not really believe that was true; respondent was falsely informed that certain pieces of evidence which were sent to the crime lab would link him to the fire; respondent was falsely informed that Bailey had certain witnesses that would testify to his involvement in the fire; respondent was falsely informed that Bailey had a videotape of him entering and exiting the trailer that burned; respondent was misinformed that if he "cooperated" he would not be arrested  he would just be taken up to the jail and booked and released; respondent testified that he admitted to the crime so Bailey would "quit bothering [him] about it," and because "he didn't want to go to jail"; respondent was not given Miranda warnings until after his full oral admission and after he was asked to submit to a typed statement; respondent's warned written statement was given immediately after his unwarned oral statement; and the written statement was a "mere reiteration" of the oral statement.
 3 We have considered the foregoing, aside from the respondent's unsupported allegations. On this record we conclude that the totality of the circumstances here indicate that this respondent's unwarned oral statement was not voluntary or admissible in light of the intimidating, coercive, and deceptive atmosphere of the interrogation.
The State, relying upon Oregon v. Elstad (1985), 470 U.S. 298, 84 L.Ed.2d 222, 105 S.Ct. 1285, contends that the trial court correctly refused to suppress respondent's written statement. We disagree.
In Elstad, police officers picked up the respondent at his home as a suspect in a burglary. As he was being picked up, respondent made an incriminating remark ("Yes, I was there" (at the scene of the robbery)), without having been given Miranda warnings. Then, after he was transported to the police station, and after he was advised of and waived his Miranda rights, respondent indicated that he wished to speak with the officers and gave a full confession. In the subsequent *352 prosecution for burglary, the trial court excluded from evidence respondent's first statement, "Yes, I was there," because he had not been given Miranda warnings, but admitted the subsequent written confession. Respondent was convicted; however, the Oregon Court of Appeals reversed, holding that the written confession should also have been excluded. The court of appeals determined that because of the brief period separating respondent's initial, unconstitutionally obtained statement and his subsequent written confession, the "cat was sufficiently out of the bag to exert a coercive impact" on respondent's written confession, rendering it inadmissible.
Thereafter, the United States Supreme Court, in a 6 to 3 decision, reversed the judgment of the Oregon Court of Appeals and remanded the case. The court held that the self-incrimination clause of the fifth amendment does not require the suppression of a confession, made after proper Miranda warnings and a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the suspect. In reaching its conclusion, the court distinguished the fourth amendment exclusionary rule from the function of Miranda to guard against the prosecutorial use of compelled statements as prohibited by the fifth amendment. (Oregon v. Elstad (1985), 470 U.S. 298, 84 L.Ed.2d 222, 105 S.Ct. 1285; People v. Fuller (1986), 141 Ill. App.3d 737, 742, 490 N.E.2d 977, 980.) The court determined:
"It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will so taints the investigation process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." (Emphasis added.) (Oregon v. Elstad (1984), 470 U.S. 298, 309, 84 L.Ed.2d 222, 232, 105 S.Ct. 1285, 1293-94.)
The court noted that the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements.
The court recognized the "vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a `guilty secret' freely given in response to an unwarned but noncoercive question." (Oregon v. Elstad *353 (1984), 470 U.S. 298, 312, 84 L.Ed.2d 222, 234, 105 S.Ct. 1285, 1295.) Thus, the court concluded "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." 470 U.S. 298, 314, 84 L.Ed.2d 222, 235, 105 S.Ct. 1285, 1296.
In that case, the court determined that the respondent's unwarned remark was voluntary, within the meaning of the fifth amendment. The court believed that neither the environment nor the manner of either interrogation was coercive, pointing out that the initial conversation took place at midday, in the living-room area of respondent's own home, with his mother in the kitchen area, a few steps away.
 4 There are several significant distinctions between Elstad and the case at bar. First, in Elstad, the respondent's warned confession was preceded by an unwarned yet volunteered remark. Here, however, defendant's warned written confession was preceded by an unwarned oral confession. Further, the written confession here was, by the detective's own admission, a "mere reiteration" of the previous oral confession. Second, Elstad involved a "simple failure to administer Miranda warnings, unaccompanied by "any actual coercion" or other circumstances calculated to undermine the suspect's ability to exercise his free will." In the present case, however, there is a considerable amount of unrefuted evidence which would suggest coercion and intimidation. Third, unlike in Elstad, respondent's written statement here immediately followed his full, detailed oral statement. From an examination of the "surrounding circumstances and the entire course of police conduct" with respect to both of respondent's statements, we conclude that the manner of interrogation was coercive. (Oregon v. Elstad (1984), 470 U.S. 298, 84 L.Ed.2d 222, 105 S.Ct. 1285.) Further, due to the coercion and improper tactics used in obtaining an unwarned oral statement, the administration of Miranda warnings immediately prior to the written statement did not cure the condition that rendered the oral statement inadmissible.
Accordingly, we reverse the adjudications of delinquency and wardship, vacate the disposition, and remand the case to the circuit court for a new adjudicatory hearing with directions that the written statement be suppressed.
Reversed and remanded.
GREEN and MORTHLAND, JJ., concur.