THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH DAVIDSON, Defendant-Appellant.

First District (6th Division)   No. 1—88—0311

Opinion filed March 30, 1990.

Randolph N. Stone, Public Defender, of Chicago (Barbara McClure, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Marilyn F. Schlesinger, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Defendant, Kenneth Davidson, was charged with attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1), two counts of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), (b)(1)), and armed violence (Ill. Rev. Stat. 1987, ch. 38, pars. 33A—2, 12—4(a)). Following a bench trial, defendant was convicted of one count of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(1)) and was sentenced to probation for a term of two years. Defendant has appealed his conviction, contending that he was deprived of the right to effective assistance of counsel guaranteed by the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV) because his attorney failed to move to suppress a statement made by defendant.

The evidence adduced at trial established that on April 28, 1987, defendant shot his wife, Stephanie Stelly, in the forehead with his .357-caliber handgun. The victim was hospitalized for two months, suffered permanent memory loss as a result of the gunshot wound, and had no recollection of the shooting incident or anything prior thereto.

Chicago police detective Steven Brownsfield testified that he ar-

rived at the scene about 12 noon and found the victim in the basement with a gunshot wound in the middle of her forehead. Brownsfield saw little blood, but did observe brain matter exuding from the wound. Defendant was in the backyard and was subsequently placed under arrest and advised of his *Miranda* rights. He indicated that he understood his rights and initially said that the shooting was an accident, but later altered his story several different times. Defendant was very distraught and had to be restrained when the victim was carried from the house by the paramedics. Brownsfield recovered a .357-caliber handgun with two spent cartridges from the scene. He testified further that he was present during the conversation between defendant and Assistant State's Attorney David Cuomo at the police station and that the conversation was subsequently reduced to writing.

Assistant State's Attorney David Cuomo testified that he spoke with defendant at about 5 p.m. Cuomo introduced himself to defendant and advised him of his *Miranda* rights. Defendant indicated that he understood his rights and agreed to give Cuomo a statement regarding the shooting.

Thereafter, defendant stated that he and the victim had been married since 1984 and had two children. Defendant was in the Army Reserves and was stationed at Fort Sheridan, Illinois. Defendant had recently purchased a .357-caliber handgun for use on his part-time job as a security guard. He had received weapons training in the service and was considered a marksman. After a physical examination at Fort Sheridan, defendant learned that he had gonorrhea. Defendant stated that he intentionally shot the victim out of anger after she admitted, in writing, that she had been unfaithful to him and had transmitted the venereal disease to him. Defendant stated further that after he shot the victim, he burned her written admission because he believed it could get him into trouble.

Defendant subsequently agreed to have his statement reduced to writing. Prior to signing the written statement, defendant added the comment that he was sorry and had not wanted to hurt the victim. The statement also indicated that defendant had not been threatened by the police and that the statement had been given freely and voluntarily. Cuomo also signed the statement, as did Detectives Brownsfield and Higgins, who were present during the interview.

Cuomo testified further that defendant asked several times about the victim's condition and that Cuomo told him that her condition was critical and it was likely that she could die. Upon receiving this information, defendant made his statement regarding the shooting.

Defendant was not so upset that his ability to converse was affected, and Cuomo did not have any difficulty communicating with him. Cuomo stated that although defendant added only one comment to the statement, he was free to add anything that he wished. He also denied that any of the officers threatened to charge defendant's sister with a crime.

Defendant's statement was admitted into evidence without objection by defense counsel.

At trial, defendant testified that about 12 noon on April 28, 1987, he received a telephone call about a job interview with a security company and went upstairs for his gun. When he returned downstairs, defendant was jumping up and down because he was happy about the interview. The gun discharged when he picked it up to look at it. Defendant stated that he "tried to grab it again and it went off again." Defendant called to his wife, who was in the basement, but she did not answer. When he went toward her and turned the light on, he discovered that she was lying on the floor, and he called for emergency assistance. He then called his sister, his brother, and his mother-in-law. Defendant stated that he did not intentionally shoot his wife. He stated further that after the paramedics arrived, he "freaked out" and could not believe what was happening. Defendant's sister arrived at the same time as the police. Defendant also testified that he had handled rifles in the military, but he had no experience with handguns. He indicated that at the direction of his superiors, he had burned some papers relating to his military service on the night before the shooting.

Defendant stated that he was taken to the police station about 12 noon. Although he repeatedly asked about his wife's condition, the police would not give him any information and denied his requests to see her. Defendant denied the veracity of the written statement introduced against him and testified that he only signed it because the police officers threatened to charge his sister as an accessory because she allegedly threw some papers down the toilet. He indicated that he repeatedly told the police that the shooting was an accident, but they wanted to know whether he and his wife had been fighting.

On cross-examination, defendant initially testified that he opened his gun case to check the gun. When he picked up the weapon, it jerked out of his hand and discharged. He subsequently testified that he never really picked up the gun or got it out of the case. When he touched it, the gun jumped in his hand and discharged, and when he picked it up, it discharged a second time. After it discharged the second time, defendant put the gun back into the case and went to look

for his wife.

The trial court found the defendant guilty of one count of aggravated battery and sentenced him to a term of two years' probation. Defendant appeals, contending that he was deprived of the effective assistance of counsel because his attorney failed to move to suppress the written statement introduced against him.

■■ ■ The adequacy of a defendant's trial counsel entitles him to a new trial only if his counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246, 1255-56.) A defendant is entitled to competent, not perfect, representation. (*People v. Eddmonds* (1984), 101 Ill. 2d 44, 69, 461 N.E.2d 347, 359.) When incompetency of trial counsel is alleged, the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable legal assistance. *Strickland v. Washington* (1984), 466 U.S. 668, 688-89, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065.

■■ ■ Competency is determined from the totality of counsel's conduct at trial. (*Eddmonds*, 101 Ill. 2d at 69, 461 N.E.2d at 359; *People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677, 685.) Errors in judgment or trial strategy do not establish incompetent representation by counsel. (*Eddmonds*, 101 Ill. 2d at 70, 461 N.E.2d at 360.) The decision of whether to file a motion to suppress evidence in a criminal case is a question of trial strategy and has no bearing on the issue of competency of counsel. *People v. Atkins* (1987), 161 Ill. App. 3d 600, 609, 515 N.E.2d 272, 277; *People v. Conley* (1983), 118 Ill. App. 3d 122, 129, 454 N.E.2d 1107, 1114.

Careful review of the trial record in the instant case reveals that defense counsel cross-examined the State's witnesses at length. Defendant's attorney questioned Brownsfield and Cuomo about the circumstances surrounding defendant's arrest and his verbal and written statements. He entered several objections during the course of the trial and moved for a finding of not guilty at the close of the State's evidence. The closing argument of defense counsel focused upon defendant's testimony that the shooting was accidental and that he was under a great deal of stress when Cuomo summarized his verbal statement and reduced it to writing.

■ Moreover, comparison of defendant's testimony on direct with his cross-examination testimony indicates that even during trial, he offered several different descriptions and versions of the shooting in-

cident. He also offered several different explanations as to why he signed the inculpatory statement. This lends credibility to the testimony of Brownsfield and Cuomo about the circumstances surrounding defendant's arrest and his verbal and written statements. The record indicates that a motion to suppress defendant's statement would likely have been denied, and the result of the trial would not have been different. Consequently, the failure of defendant's attorney to file such a motion did not constitute a deprivation of the right to effective assistance of counsel.

Defendant relies primarily on *People v. Christomos* (1988), 172 Ill. App. 3d 585, 527 N.E.2d 41, and on *In re T.S.* (1986), 151 Ill. App. 3d 344, 502 N.E.2d 761. These cases are, however, factually distinguishable from the case at bar. *In re T.S.* involved a minor who was not advised of his *Miranda* rights and was coerced into making a confession by police officers who interrogated him without counsel or his parents present, misled him about the evidence against him, and told him that he would be released if he confessed. The court concluded that the respondent's confession was not given voluntarily and was, therefore, inadmissible in light of the intimidating, coercive, and deceptive atmosphere of the interrogation. *In re T.S.*, 151 Ill. App. 3d at 351, 502 N.E.2d at 766.

The record in the instant case does not indicate that defendant was coerced into making a confession. Rather, the evidence established that he was advised of his *Miranda* rights and voluntarily agreed to give Cuomo a verbal and written statement. Although defendant asked about his wife several times, he did not testify that he signed the statement because the police would not give him information about his wife's condition. Instead, he testified at one point that the handwriting on the statement did not resemble his signature. At another point, defendant stated that his motivation for making the statement centered upon the possibility that his sister might be arrested and charged as an accessory. Cuomo denied that defendant's sister was ever at risk of being arrested or charged with a crime. Moreover, there is no indication that the police misled defendant about the evidence obtained or promised that he would be released if he confessed. Consequently, the circumstances surrounding defendant's statement are not analogous to those surrounding the respondent's confession in *In re T.S.*

In *People v. Christomos* (1988), 172 Ill. App. 3d 585, 527 N.E.2d 41, the court affirmed the ruling of the trial court which sustained defendant's motion to suppress his statement based upon the finding that, although defendant had requested an attorney, his request was

not honored, and he was denied the right to counsel prior to giving his statement. The court also found that the evidence established that defendant was precluded from seeing his wife until he made a statement. The trial court concluded that defendant's confession was coerced and involuntary.

The record in the case at bar does not indicate that defendant requested or was denied the right to counsel. Rather, Brownsfield testified that defendant was advised of his *Miranda* rights and voluntarily gave a verbal and written statement. Moreover, Cuomo testified that when asked by defendant about the victim's condition, he told defendant that there was a likelihood that she could die as a result of the gunshot wound, and there is nothing in the record to contradict the accuracy of this information. In addition, defendant's own testimony reveals that he did not give Cuomo a statement so that he could see his wife. Instead, defendant claimed that he gave his statement because the officers threatened to arrest and charge his sister. This claim was denied by Cuomo. Defendant also stated that the handwriting on the statement did not resemble his signature, implying that the signature had been forced. The trial court obviously found this testimony incredible. In sum, the record does not support a claim that defendant's statement was coerced or involuntary. Consequently, the statement was properly held admissible, and defense counsel's failure to file a motion to suppress cannot be considered ineffective assistance of counsel. See *Murphy*, 72 Ill. 2d at 436-37, 381 N.E.2d at 685-86.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.