THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYRONE DANIELS, Defendant-Appellant.

First District (2nd Division)   No. 1—90—3490

Opinion filed May 26, 1992.

George M. Zuganelis, of Berwyn, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Clare T. McEnery, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

After a bench trial, defendant Tyrone Daniels was found guilty of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)), armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)), and concealment of

a homicidal death (Ill. Rev. Stat. 1987, ch. 38, par. 9—3.1(a)); he was subsequently sentenced to concurrent terms of 60 years' imprisonment for first degree murder, 20 years for armed robbery, and five years for concealment of a homicidal death. In this appeal, he contends that he was deprived of his right to effective assistance of counsel because his trial counsel (1) allegedly failed to effectively present his motion to suppress statements; (2) allegedly failed to effectively argue the applicable law regarding accountability; (3) successfully obtained the admission into evidence of the extrajudicial statement of Sheila Daniels, a codefendant; and (4) allegedly refused to permit him to testify at trial.

On November 4, 1988, after receiving reports of an abandoned car blocking an alley, police discovered the body of David Ray McCoy, lying face up with three gunshot wounds to the head, in the back seat of his car. Lying on the floor next to McCoy's head, police found a .25 caliber semi-automatic Beretta, later determined to be the weapon which caused McCoy's wounds. Following an investigation and attempts to trace the gun, police spoke with, and later arrested, Sheila Daniels, defendant's sister. On November 18, 1988, shortly after speaking with Sheila, police arrested defendant.

Before trial, counsel for defendant filed several motions to suppress statements made by defendant after his arrest and to suppress evidence the police recovered in defendant's apartment. In support of those motions, defendant alleged that the police had lacked probable cause to arrest him, that he was not advised of his constitutional rights at any time subsequent to his arrest, that his admissions were involuntary and the result of police coercion, and that Sheila had acted as an agent of the police.

During the hearing on the motions to quash the arrest and suppress evidence, defendant testified that, at approximately 3 a.m. on November 18, 1988, he was awakened by a knock at his door. When he asked who it was, the police identified themselves and told him to open the door and let them in. After defendant allowed the police entry, he was told to get up against the wall and to drop the blanket which he had wrapped about his naked body. While searching the apartment, the police told him to get dressed, giving him some of his clothes; they did not, however, provide him any underwear or socks. Although he was doing nothing illegal, defendant was then placed under arrest. At no time in the apartment did the police advise him of his constitutional rights.

Immediately after his arrest, defendant was taken to the police station, where he was questioned by the police. He was handcuffed

tightly to the wall and was not allowed to go to the washroom. He initially told the police that he did not know anything about the death of McCoy. In response, the police told him that he "might as well tell everything \*\*\* because your sister is fixing to go to jail for a murder." Shortly thereafter, one of the police officers punched him in his stomach and grabbed him by his hair, knocking his head into the wall. The police told him that if he did not cooperate his sister might get the death penalty. Sheila then entered the interrogation room and, after hugging defendant, told him loudly "to do whatever they say to do, we was [sic] gone [sic] go home and everything was gone [sic] be all right." After Sheila left, defendant decided to cooperate with the police; however, he was still not advised of his constitutional rights.

Shortly thereafter, defendant was interviewed by an assistant State's Attorney, who advised him of his rights. His statement to the assistant State's Attorney, transcribed by a court reporter, was simply what the police told him to say. Further, he could not read or write and did not know that the consent form he signed meant that anything found in his apartment could be used against him in court.

Countering defendant's motion to suppress, the State presented the testimony of Michael Cummings, the Chicago police detective assigned to investigate McCoy's murder. He testified that the gun found near McCoy's body was eventually traced to Sheila Daniels, who, when questioned by the police, told them that defendant had killed McCoy; later, she led the police to defendant's apartment.

When the police arrived at defendant's apartment, Cummings and several other officers knocked on defendant's door and identified themselves. After defendant let the officers into his apartment, the police asked him his name and, when he answered, they placed him under arrest, advising him of his constitutional rights.

The officers then drove defendant to the police station, where they placed him in an interview room. Cummings again advised defendant of his rights and interviewed him for approximately 45 minutes. Defendant then asked to see his sister, who was brought into the room. Sheila Daniels "basically asked how [defendant] was doing. \*\*\* She said, just tell him the truth. She said, I told them what happened and just tell them what happened, tell them the truth." Sheila then left the room and Cummings interviewed defendant again.

Thereafter, the assistant State's Attorney spoke with defendant and advised him of his rights. Defendant said he understood those rights and agreed to give a statement to the State's Attorney, which was subsequently transcribed. Defendant was not hit or struck or in any manner mistreated during his interrogation.

After hearing the testimony and the arguments of counsel, the court denied defendant's motion, finding that the police had probable cause to arrest defendant and that defendant's statements were not coerced by the police, but rather were voluntarily given.

After denial of defendant's motion to suppress, trial commenced. During the trial, the court was presented with transcripts of testimony from several witnesses in Sheila Daniels' jury trial. The testimony presented established that Sheila Daniels and her daughter lived with McCoy. Further, the testimony established that McCoy, who was a paraplegic since 1968, routinely carried a black .38 caliber handgun.

After the stipulations to the transcripts, Cummings gave essentially the same testimony that he had given in the suppression hearing. In addition, Cummings testified that, at 4 a.m. in the police station, after he had been advised of his rights, defendant initially denied involvement in McCoy's murder. After being told that Sheila had "told [the police] that [defendant] was the one that did the murder on David Ray McCoy," defendant gave the police a different version.

According to Cummings, defendant stated that Sheila Daniels shot McCoy in the back of his head while McCoy was seated in his car in his garage. Defendant then took the gun away from his sister and put it in his pocket. Next, defendant moved McCoy's body to the back seat of the car, took McCoy's gun, and then shot McCoy twice in the forehead with Sheila's gun to "make sure that he was dead." Thereafter, defendant drove McCoy's car to an alley near McCoy's place of business, with Sheila following in her own car. Defendant then wiped all fingerprints off Sheila's gun and left it in the car by McCoy, locking all the doors of the car, which he left there. Defendant then emptied McCoy's wallet of money and dumped it in a trash bin at a McDonald's restaurant.

After giving his statement to Cummings, defendant spoke with Sheila in the interview room. Afterwards, defendant was interviewed by the assistant State's Attorney and gave substantially the same version.

During cross-examination, Cummings acknowledged that there was nothing in his investigation which would indicate that defendant had knowledge of, or assisted in, Sheila's plan to shoot McCoy.

The trial testimony of Anna Democopoulos, the assistant State's Attorney who interviewed defendant, essentially corroborated Cummings' testimony. In addition to what he had told Cummings, defendant told her that Sheila and McCoy had been arguing when Sheila accidentally shot McCoy. Defendant's statement, taken by the court

reporter and given to Democopoulos, was then entered into evidence over defense counsel's continuing objection to the admission of defendant's statements to the police.

The State lastly presented the testimony of Mitra Kalelkar, the medical examiner, who stated that she was unable to determine which bullet had been fired first, the one in the back of McCoy's neck or the two in his forehead. Dr. Kalelkar stated, however, that if the bullet wound to the back of the neck was fired first, McCoy would have died instantly and, thus, would have been dead at the time the two gunshot wounds to his forehead were inflicted.

After the prosecution rested, the defense presented no witnesses; however, the defense did offer into evidence Sheila Daniels' statement made to police.

Following closing arguments, the court found defendant guilty of first degree murder, armed robbery, and concealment of a homicidal death and later sentenced him to concurrent terms of 60 years' imprisonment for first degree murder, 20 years for armed robbery, and five years for concealment of a homicidal death.

Defendant contends on appeal that he was deprived of effective assistance of trial counsel. Specifically, defendant contends that his trial counsel failed to effectively present his motion to suppress; failed to effectively argue the applicable law regarding accountability; successfully obtained the admission into evidence of the extrajudicial statement of Sheila Daniels; and refused to permit him to testify at trial.

The constitutionally guaranteed right of effective assistance of counsel has not been provided if defendant can prove that his counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings "were so serious as to deprive the defendant of a fair trial." (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Defendant must thus establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) There is, however, a strong presumption that counsel's performance falls within the "wide range of reasonable professional assistance." (*Strickland v. Washington*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *People v. Whittaker* (1990), 199 Ill. App. 3d 621, 627, 557 N.E.2d 468.) Correspondingly, on review, the determination of the reasonableness of trial counsel's actions must be evaluated from trial counsel's perspective at the time

of the alleged error, without hindsight, in light of the totality of the circumstances. *Strickland v. Washington*, 466 U.S. at 688-89, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *People v. Davidson* (1990), 196 Ill. App. 3d 634, 638, 554 N.E.2d 444.

In the instant case, defendant maintains that he probably would not have been convicted had his attorney properly argued and presented his motion to suppress. Specifically, defendant asserts that his trial counsel erroneously presented a coercion and physical abuse theory during the suppression hearing, rather than the more "viable" theory that defendant was influenced or controlled by his older sister. Defendant maintains that had his attorney argued that his psychological state of mind was such that he would have done anything Sheila had told him to do, his motion to suppress his statement as involuntary would have been granted.

The record, however, does not support the contention that defendant was influenced to a great extent by his sister. Nowhere does the record indicate that defendant was somehow controlled or dominated by his sister or that he would abide by her wishes to his own detriment. Moreover, the record is devoid of any evidence demonstrating that defendant's statement was involuntary due to his emotional condition. Rather, the only evidence presented that defendant acquiesced to his sister's will was his statement that he took her advice to "tell the truth."

■ Certainly, the failure to file or to present a viable motion to suppress could constitute ineffective assistance of counsel (see *People v. Brinson* (1980), 80 Ill. App. 3d 388, 399 N.E.2d 1010); however, in this case, trial counsel presented what amounted to the most viable basis to support the motion to suppress. Defendant's present assertion that he was influenced and coerced by his sister is not borne out by the record. Further, defendant cannot liken his situation to that of the defendant in *People v. Rhoads* (1979), 73 Ill. App. 3d 288, 391 N.E.2d 512, who was high on LSD during police questioning and suffering from emotional upset due to the unsettling news of his wife's death. Consequently, we find that defendant was not deprived of effective assistance of trial counsel by his counsel's failure to present the argument that defendant was psychologically influenced by his sister. See *People v. Bourke* (1992), 223 Ill. App. 3d 732, 585 N.E.2d 1325.

Defendant next contends that his trial counsel erroneously misapprehended the applicable law on accountability. Defendant maintains that his trial counsel made "outlandish" arguments to the effect

that defendant could not have killed McCoy because Sheila's gunshot had already killed him.

■ A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the offense. Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c); *People v. Foster* (1990), 198 Ill. App. 3d 986, 556 N.E.2d 1214.

■ In arguing that his trial counsel misapprehended the accountability law, however, defendant distorts the record and fails to mention any of his trial counsel's attempts to show that defendant in no manner participated in the planning or commission of the shooting of McCoy. Defense counsel specifically asked Detective Cummings whether there was "anything in any of Mr. Daniels' statements that would lead you to believe that Tyrone Daniels did anything to aid, assist or participate with Sheila Daniels in any way until after Sheila Daniels had shot Mr. McCoy," to which Cummings answered, "No." Defense counsel pursued a similar line of questioning in cross-examining Democopoulos. Likewise, during closing argument, defense counsel argued that nothing in defendant's statements indicated that he had any knowledge of Sheila's intent to shoot McCoy or in any way "aided, assisted, abetted, or [was] otherwise involved in this."

Clearly, defense counsel was aware of the applicable law concerning accountability and presented a defense based on that law, not on any "misapprehension" of it. Thus, defendant's contention that his counsel did not provide adequate legal assistance in this regard must fail.

■ Defendant next argues that his counsel erred in successfully obtaining the admission of Sheila Daniel's statement into evidence. Defendant argues that Sheila's statement "figured prominently" in the court's determination and thus, because that statement was "admitted solely due to defense counsel's efforts[,] obviously defendant has been deprived of effective assistance of counsel."

Again, the record does not support defendant's assertion. Although Sheila's statement is not contained in the record, the court's and the attorneys' allusions to that statement indicate that defense counsel attempted to use it to show that defendant was unaware that Sheila was going to shoot McCoy. Defense counsel's use of Sheila's statement was thus further support for counsel's arguments that defendant was not accountable for Sheila's actions.

Further, because we find that the decision to use Sheila's statement was a matter of trial tactics, that decision has no bearing on the

issue of competency of counsel. (*People v. Whittaker*, 199 Ill. App. 3d at 629.) Choices which are made on the basis of strategic considerations after a thorough investigation of all matters relevant to plausible options have traditionally been considered to be unchallengeable. (*Strickland v. Washington*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) Accordingly, we find that defendant was not denied effective assistance of counsel due to his attorney successfully obtaining the admission of Sheila's statement. See also *People v. Watts* (1992), 226 Ill. App. 3d 519.

■ Defendant lastly argues that defense counsel improperly refused to allow him to testify. Defendant acknowledges that the support for his contention is not contained in the record, but he raises the error "so as to present defendant's ineffective assistance of counsel claim in it's [*sic*] proper perspective," promising to file a post-conviction petition raising this issue.

As the State properly asserts, this court is unable, based upon the record, to determine the merits of defendant's claim. (See *People v. Majer* (1985), 131 Ill. App. 3d 80, 475 N.E.2d 269.) There is no question that a criminal defendant's prerogative to testify at his own trial is a fundamental right; the question of the exercise of that right is thus not a matter of a strategic or tactical decision best left to trial counsel. (*People v. Dredge* (1986), 148 Ill. App. 3d 911, 913, 500 N.E.2d 445.) However, this court, presented as it is with a record containing no support for defendant's assertion, must resolve the question against him. See *People v. Majer*, 131 Ill. App. 3d 80, 475 N.E.2d 269.

Based upon the foregoing, we find that, based upon defendant's assertions of error, defendant was not denied effective assistance of trial counsel. The judgment of the circuit court of Cook County is thus affirmed.

Affirmed.

HARTMAN, P.J., and SCARIANO,* J., concur.

---

*After oral argument in this case, Justice McCormick recused himself. Justice Scariano has read the briefs, listened to the tapes of the oral arguments, and fully participated in the deliberations concerning disposition of this case.