THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES TACKETT, Defendant-Appellant.

Second District   No. 2—91—0866

Opinion filed July 9, 1993.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Beth Katz, of Evanston, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, Brian L. Buzard, of Mt. Morris, and Jay Wiegman, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Charles Tackett, was found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)) and sentenced to the Department of Corrections (DOC) for a term of six years. Defendant appeals, alleging the trial court erred in denying his pretrial motion to suppress his statements confessing to the crime. We affirm.

A Lake County information charged that defendant, who was 17 years of age or older, knowingly committed an act of sexual pene-

tration with C.M., who was under 13 years of age when the act was committed, in that defendant placed his finger in the vagina of C.M. Mark Pleasant, an investigator with the Illinois Department of Children and Family Services (DCFS), and Len Brezinski, a detective with the Lake County sheriff's department, first questioned defendant on October 24, 1990, at the Round Lake police station. Defendant, who was 19 years of age at the time of arrest, signed a waiver of his *Miranda* rights and then signed a statement he provided to the authorities after they had talked for about an hour. Such statement fully admitted his digital penetration of C.M.'s vagina on October 22, 1990. C.M. was a two-year-old child that defendant baby-sat regularly. The statement also said defendant voluntarily agreed to talk with Brezinski and Pleasant and that "Det. Brezinski told me what all of my legal rights are and I understand all of them. I have not been threatened or promised anything." Defendant's statement revealed that he was himself molested on more than one occasion as a child. Defendant's statement indicated that he had read it, understood it, and had been given the chance to make changes and corrections. He was then returned to his sister's house.

Defendant was formally arrested the following day and transported to the sheriff's department in Waukegan, where he made a second statement to the same authorities. Defendant's second statement added that he had also digitally penetrated C.M.'s vagina on October 19, 1990.

Defendant filed a motion to suppress such statements on December 19, 1990. Defendant's motion alleged: (1) that his statement on October 24, 1990, was not made with a knowing and intelligent waiver of his right to remain silent or his right to counsel; (2) that this statement was made as a result of improper inducements by the officials; and (3) that the initial questioning was conducted in violation of the defendant's right to be advised of his *Miranda* rights. Defendant further alleged that his second statement from October 25, 1990, should also be suppressed since it violated defendant's rights and was tainted by defendant's coerced statements on October 24, 1990.

Linda Bresolin, a clinical psychologist, testified at the May 30, 1991, hearing on defendant's motion that she administered a battery of psychological tests to defendant at his counsel's request. She concluded defendant was in the borderline range of intellectual functioning and scored a full scale IQ of 74. Bresolin explained that an IQ of 80 is in the below average range and an IQ of 69 indicates

mental retardation. Bresolin noted that defendant frequently asked her to repeat the instructions given to him during testing.

Pleasant testified he was assigned to investigate the alleged sexual assault on C.M. Pleasant and Brezinski located defendant at his sister's home on October 24, 1990, where he was baby-sitting his four-year-old nephew. They informed defendant they were investigating the allegations concerning C.M. and wished to speak with him at the Round Lake police department. Defendant was concerned about leaving the home since his sister would be home soon and would wonder where he and his nephew were. Pleasant offered to contact defendant's sister when they reached the station. Pleasant testified he did not conduct the interview in the home because he did not want the four-year-old to be present and no typewriter would be available at the house to take a statement from defendant if necessary.

The officers gave defendant his *Miranda* warnings at the station before defendant made any statements. Brezinski read defendant his rights one at a time and asked defendant to initial each one on the *Miranda* form or inform Brezinski if he did not understand. Defendant initialed each statement and signed the form waiving his *Miranda* rights. After a 40- to 60-minute discussion with the officers, defendant admitted to having committed the offense. Defendant also told the officers he had been abused as a child and indicated he needed help. Pleasant said he then gave defendant the name of a clinic which might aid defendant in counseling. Defendant signed his statement and the officers returned him to his sister's home. The following day, the officers returned to arrest defendant. The officers readvised defendant of his *Miranda* rights. Defendant then made an oral statement that was reduced to writing and signed by him. Pleasant testified that no threats or promises were made to induce defendant into making the statement. Brezinski's testimony substantially corroborated that of Pleasant. Defendant motioned at that time for a directed verdict which was denied.

Defendant testified he thought the officers were from the "Children and Families Association" and that they wanted to talk to him at the beach. He said the officers indicated they were there to help defendant. Defendant said he thought the officers were there to help children and he considered himself a child. Pleasant gave him the name of a doctor or clinic on the day of the first interview. Defendant did not read the form waiving his *Miranda* rights before he signed it. Defendant admitted he knew what was written in his

statement of confession before he signed it. Defendant said he also gave the second statement on October 25 because he trusted the officers and thought they would help him. Defendant stated that he had been in special education throughout his schooling. He had finished high school and received mostly A's and B's.

The court denied defendant's *motion* and commented:

> "There is no doubt in this case that he [defendant] was given his *Miranda* warnings, and there was no testimony from the defendant that he did not understand those warnings.
>
> This case [*sic*], the police did not attempt to mislead the defendant by indicating that they had evidence, that they did not have, or misstating evidence about the case to the defendant.
>
> * * *
>
> I think the defendant may well in fact have misapprehended some of the circumstances surrounding what was going on, however, that's not really the standard.
>
> In all the cases cited by the defense, and all the cases that I was able to find, there was some activity or intent on the police to in some way deceive the defendant.
>
> * * *
>
> Although I find that the defendant may have perceived the situation, there is no—there has been no testimony that he did not know and understand what his rights were * * *.
>
> The defendant may in fact have not completely understood everything that was going on around him, okay, but I find that there was no attempt or there was no action from the police that led him to those conclusions."

Defendant was later found guilty after a stipulated bench trial and sentenced to six years of imprisonment.

Defendant contends on appeal that his age and intellectual level, combined with the officers' promise to aid him with counseling, induced him to confess to the offense herein, thus rendering his statement to the police involuntary and inadmissible in evidence. A statement of confession must be voluntary in order to be admissible. (*People v. Bernasco* (1990), 138 Ill. 2d 349, 357.) The test for voluntariness is whether such statement was made freely and without inducement of any sort or whether defendant's will was overcome at the time he confessed. (*People v. Kokoraleis* (1986), 149 Ill. App. 3d 1000, 1007.) A court must consider the "totality of the circumstances" to determine whether a statement has been given vol-

untarily. (*Kokoraleis*, 149 Ill. App. 3d at 1007.) Such circumstances include defendant's mental ability, familiarity with the English language, age, education, and experience. (*Bernasco*, 138 Ill. 2d at 365; *People v. Berry* (1984), 123 Ill. App. 3d 1042, 1044.) Courts should also consider the duration of questioning and determine whether defendant received his constitutional rights or was subjected to any physical punishment. (*In re T.S.* (1986), 151 Ill. App. 3d 344, 350.) The trial court's decision on whether a defendant's confession is voluntary will not be overturned on appeal unless it is against the manifest weight of the evidence. *Kokoraleis*, 149 Ill. App. 3d at 1007.

■ Defendant contends his borderline intellectual functioning allowed the officers to induce him to confess to the offense by promising to help defendant find counseling to overcome the sexual abuse he had suffered as a child. Subnormal mentality does not *ipso facto* make a confession involuntary where the subnormality has not deprived the defendant of the ability to understand the meaning and ramifications of his confession. (*People v. Abernathy* (1989), 189 Ill. App. 3d 292, 307.) Evidence of limited mental capacity alone does not indicate that a defendant is incapable of waiving his constitutional rights and making a voluntary confession (*People v. Ellison* (1984), 126 Ill. App. 3d 985, 992; *Kokoraleis*, 149 Ill. App. 3d at 1013); rather, it is only one of the issues to be considered in reviewing the totality of the circumstances under which a confession is made. The trial court is in a better position than a reviewing court to evaluate a defendant's ability to understand his rights. *Abernathy*, 189 Ill. App. 3d at 307.

■ Here, the officers informed defendant from the beginning that they wished to speak about the sexual abuse allegations regarding C.M. Defendant read and indicated he understood the waiver form which he signed before any questioning commenced at the police station. The record shows that defendant read over and corrected the contents of his statements before signing them. He admitted at trial that he knew what the statements said. Pleasant testified that he gave defendant the name of a clinic which might be able to assist defendant with counseling but did not do so until defendant indicated he needed help. Neither Pleasant nor Brezinski threatened or promised defendant anything in order to procure his statements. A review of the totality of the circumstances surrounding defendant's statements demonstrates that defendant voluntarily confessed to the instant offense. We do not find that the officers'

attempt to find counseling for defendant added a deceptive atmosphere to the interview.

The record supports the trial court's finding that defendant's borderline intellectual functioning did not interfere with his ability to comprehend the meaning of a voluntarily made statement and, therefore, his statements were admissible. We find it significant that the trial court here reached its conclusion after hearing official police and psychological testimony and that the court made its own observations of defendant while he was testifying. (See *Bernasco*, 138 Ill. 2d at 368.) We conclude that the State has proven by a preponderance of the evidence that defendant voluntarily provided a statement of confession to the instant offense.

The cases cited as support by defendant can be distinguished. In *Berry*, the police conduct toward the defendant bordered on deception. The police interrogated defendant about an unrelated offense and fabricated evidence of defendant's latent fingerprints found at the scene in order to obtain a confession. (See *Berry*, 123 Ill. App. 3d at 1045.) In *T.S.*, respondent was falsely informed that witnesses would testify against him and that certain pieces of evidence would link him to the crime. Respondent was also falsely informed that the police had a videotape of respondent entering and exiting the crime scene and that if respondent "cooperated" he would not be arrested. (See *T.S.*, 151 Ill. App. 3d at 351.) Here, there is no indication defendant was deceived into making a confession. The testimony at trial indicated the officers merely responded to defendant's request for help by giving him the name of a counseling clinic, rather than using the possibility of treatment as an inducement to confess. Therefore, we find that the trial court did not err in denying defendant's motion to suppress.

For the foregoing reasons, we affirm the decision of the circuit court of Lake County.

Affirmed.

INGLIS, P.J., and DOYLE, J., concur.